IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

------------------------------------------------------x
In re:                                          :    Chapter 11
                                                :
GREENWOOD FORGINGS, LLC                         :    Case No. 13-10027 (BLS)
                                                :
        Debtor.                                 :
                                                :    Related to Docket Nos. 8, 25, 36
------------------------------------------------------x

**RESPONSE AND OPPOSITION BY BRIDGEPORT CAPITAL FUNDING, LLC, TO BOSTON FINANCE GROUP, LLC'S (I) EXPEDITED MOTION FOR ADEQUATE PROTECTION AND (II) OBJECTION TO DEBTOR'S MOTION FOR INTERIM AND FINAL ORDERS AUTHORIZING DEBTOR TO USE CASH COLLATERAL**

**BRIDGEPORT CAPITAL FUNDING, LLC** ("Bridgeport Capital"), by and through its counsel, and pursuant to 11 U.S.C. §§ 361 and 363 files this Response and Opposition by Bridgeport Capital Funding, LLC to Boston Finance Group, LLC's (I) Expedited Motion for Adequate Protection and (II) Objection to Debtor's Motion for Interim And Final Orders Authorizing Debtor to Use Cash Collateral (the "Response") and in support of thereof states, as follows:

**I.    BACKGROUND.**

**A.    The Chapter 11 Case.**

1.    On January 7, 2013 (the "Petition Date"), the Debtor filed a voluntary petition in this Court for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). The Debtor continues to operate its business as debtor-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

2.    No creditors' committee has yet been appointed in this case. In addition, no trustee or examiner has been appointed.

3.    This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§157 and

1334. Venue is proper pursuant to 28 U.S.C. §§1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. §157(b).

4. The statutory predicates for the relief requested herein are Sections 105(a), 361 and 363 of the Bankruptcy Code.

### B.     The Factoring Agreement.

5. Significantly, prior to the Petition Date, Debtor and Bridgeport entered into an Accounts Receivable Purchase and Security Agreement dated July 26, 2010 (the "Agreement"), whereby Bridgeport has advanced funds to the Debtor for use in the operations of its business (the "Business"). A true and correct copy of the Agreement is attached hereto as **Exhibit "A"**. The Agreement provides for the financing and sale of accounts receivable or invoices, together with the products and proceeds thereof, generated by the Business (the "Accounts"), in which the Accounts are purchased at a discount by Bridgeport, based on an initial purchase price of approximately eighty (80%) percent of the face value of such Accounts.

6. Payments due on the full amount of the Accounts are purchased by Bridgeport, and upon collection, the amounts in excess of the factor's initial advance, fees, reserves and other amounts, as well as the Accounts which are not purchased by Bridgeport, remain subject to Bridgeport's first priority secured liens on the Collateral. In accordance with the Agreement and Notice of Assignment Letter(s) issued by Bridgeport to customers of the Debtor, payment on Accounts are deposited into the Wells Fargo Lock Box No. 101004, Account No. xxxxx-xxx-4658 (the "Lock Box").

7. Pursuant to the Agreement, Bridgeport holds first priority secured lien, which liens are properly and duly perfected by the filing of certain UCC-1 Financing Statements and UCC-3 Amendments Statements with the Delaware Secretary of State (the "UCC Statements"),

on all of the Accounts, including without limitation, the Debtor's furniture, fixtures and equipment, inventory, products and proceeds thereof, and other assets of the Estate, now existing and hereafter arising, wherever located, subject only to any applicable agreements for the subordination of Bridgeport's lien interests that may exist with respect to machinery and equipment (collectively, the "Collateral"). A true and correct copy of the UCC Statements are attached hereto as **Composite Exhibit "B"**.

8. The transactions contemplated by the Agreement with respect to the Accounts, known in the industry as "factoring" of accounts receivable, enables the Debtor to obtain and realize immediate cash flow to avoid the delays and uncertainty associated with collection of accounts receivable from its customers. Accordingly, since the Petition Date, the Debtor's ability to continue utilizing its Accounts for working capital and liquidity is necessary to the preservation and maintenance of the Estate.

**C.    The Cash Collateral Order.**

9. On January 9, 2013, based on the Agreement, the Debtor filed its Debtor's Motion For Interim And Final Orders: (A) Authorizing Debtor To Use Cash Collateral Pursuant To 11 U.S.C. §§105 And 363(C)(2); (B) Granting Adequate Protection Pursuant To 11 U.S.C. §361; (C) Modifying The Automatic Stay Pursuant To 11 U.S.C. §362; And (D) Scheduling A Final Hearing Pursuant To Bankruptcy Rule 4001 (the "Cash Collateral Motion") [Docket No. 8].

10. On January 10, 2103, the Court held hearings on several first day motions, including the Cash Collateral Motion (the "Hearing"). During the Hearing, the Debtor requested the use of cash collateral, consisting primarily of the Accounts as set forth in the Cash Collateral Motion (the "Cash Collateral"), which consent was given by Bridgeport.

11. Notwithstanding, Boston Finance Group, LLC ("BFG"), which creditor has

asserted a first lien on the Debtor's machinery and equipment by virtue of UCC-1 financing statements and subordination agreement with Bridgeport, including certain garnishment liens on the Accounts of the Debtor, objected at the Hearing to the use of Cash Collateral by the Debtor to the extent it was also not also provided with adequate protection in the Accounts it contends are also secured, but subordinate to the liens of Bridgeport, by the service of writs of garnishment on the Accounts. At the conclusion of the Hearing, and for the reasons stated on the record, the Court granted the Cash Collateral Motion.

12. According, on January 14, 2013, the Court entered its Interim And Final Orders: (A) Authorizing Debtor To Use Cash Collateral Pursuant To 11 U.S.C. §§ 105 And 363(C)(2); (B) Granting Adequate Protection Pursuant To 11 U.S.C. §361; (C) Modifying The Automatic Stay Pursuant To 11 U.S.C. §362; And (D) Scheduling A Final Hearing Pursuant To Bankruptcy Rule 4001 (the "Interim Cash Collateral Order") [Docket No. 20]. Subject to the terms and conditions of this Interim Cash Collateral Order, the Debtor was authorized to use Cash Collateral on an interim basis up to the amount of One Hundred Fifty Thousand ($150,000.00) Dollars (the "Cash Collateral Cap"), subject to the liens and security interests granted to Bridgeport, until January 22, 2013 (the "Termination Date").

13. Moreover, as adequate protection for the diminution in value of its interests in the Collateral, including Cash Collateral, Bridgeport was granted valid, binding, enforceable and perfected replacement liens in all of the Collateral (the "Bridgeport Replacement Lien"). Bridgeport was also provided with additional adequate protection in form of: (i) an allowed super-priority administrative expense claim pursuant to Sections 503(b), 507(a)(2) and 507(b) of the Bankruptcy Code (the "Bridgeport Adequate Protection Super-priority Claim") and (ii) periodic adequate protection payments equal to fifty (50%) percent of the amounts due and

owing, collected and/or to be collected by Bridgeport or the Debtor, on all pre and post petition Accounts of the Debtor (the "Adequate Protection Payments").

14. The Adequate Protection Payments under the Interim Cash Collateral Order are to be equal to, and paid *pari passu* along with, the Cash Collateral Cap. Furthermore, for purposes of the Interim Cash Collateral Order, customers of the Debtor were authorized to remit payment on the Accounts into the Lock Box. As funds become available from the Lock Box, Bridgeport shall disburse the Cash Collateral and Adequate Protection Payments as provided by the Interim Cash Collateral Order.

15. A subsequent interim hearing on the Cash Collateral Motion is scheduled for January 22, 2013, at 9:30 a.m. before this Court (the "Continued Interim Cash Collateral Hearing"). Any party in interest objecting to the relief sought at the Continued Interim Cash Collateral Hearing was to serve and file written objections in accordance with applicable Bankruptcy Rules and Local Rules.

### D. BFG's Objection To Cash Collateral Order and Motion for Adequate Protection.

16. On January 16, 2013, BFG filed Boston Finance Group LLC's Expedited Motion for Adequate Protection (the "BFG Motion"). In the BFG Motion, BFG seeks replacement liens on the Accounts, which it designates as its "A/R Collateral" and periodic cash payments as adequate protection to the extent of any diminution in value of BFG's interest in the machinery and equipment of the Debtor.

17. Thereafter, on January 18, 2013, BFG filed its Objection By Boston Finance Group LLC To Debtor's Motion For Interim And Final Orders: (A) Authorizing Debtor To Use Cash Collateral Pursuant To 11 U.S.C. §§105 And 363(C)(2); (B) Granting Adequate Protection Pursuant To 11 U.S.C. §361; (C) Modifying The Automatic Stay Pursuant To 11 U.S.C. §362;

And (D) Scheduling A Final Hearing Pursuant To Bankruptcy Rule 4001 (the "Objection").

18.     Pursuant to the Objection, BFG contends that it perfected a lien against certain Accounts of the Debtor by serving writs of garnishment against those accounts between August 31, 2012 and September 11, 2012. BFG further argues that as a result of its purported garnishment liens, the Cash Collateral Motion should be denied to the extent it provides for the use of BFG's alleged cash collateral, without BFG's consent or absent the granting of adequate protection in its favor. In support of the Objection, BFG relies upon *Mary v. Lewis*, 249 N.W. 2d 102, 106 (Mich. 1976), for the proposition that Michigan follows the general rule that a garnishment lien attaches upon service of the writ and, therefore, BFG maintains a judgment lien on the garnished accounts and the proceeds thereof.

## II.     BRIDGEPORT'S RESPONSE AND LIMITED OBJECTION.

19.     While Bridgeport does not dispute Michigan law regarding the perfection of a garnishment lien, nor necessarily contest the perfection of BFG's garnishment lien, Bridgeport opposes the BFG Motion to the extent BFG seeks to prime or subordinate Bridgeport's rights in the cash collateral, as a first priority secured creditor. Under the Uniform Commercial Code, as adopted by the majority of states, a secured creditor's lien against cash collateral achieves priority status relative to a subsequently perfected garnishment lien against the same cash collateral. *Earl Dubey & Sons, Inc. v. Macomb Contracting Corp.*, 296 N.W.2d 582, 588 (Mich. Ct. App. 1980) ("one who becomes a lien creditor after another's security interest is perfected is subordinate to that perfected security interest")(citing *Rocky Mountain Ass'n of Credit Management v. Hessler Mfg. Co.*, 553 P.2d 840 (1976), *Walker Bank & Trust Co. v. Smith*, 501 P.2d 639 (1972)).

20.     For example, in *In re Delta-T Corp.*, the District Court for the Eastern District of

Virginia held that under Virginia's version of the Uniform Commercial Code (UCC), a secured creditor's lien against proceeds of a debtor borrower's bank accounts, which attached and was perfected at the time that accounts were created, was superior to a judgment creditors' garnishment lien against the same accounts, where the garnishment lien arose subsequently to the secured lien. *In re Delta-T Corp.*, 475 B.R. 495, 533-544 (Bankr. E.D. Va. 2012) (relying on §8.9A–317(a)(2)(A), Va. Code Ann.).

21.     Similarly, the Michigan Circuit Court of Appeals in *Earl Dubey*, relying on §440.9301, Mich. Comp. Laws Ann., held that where a bank perfected its security interest in a contractor's account approximately four months prior to the date of another creditor's service of a writ of garnishment, it was immaterial whether the contractor's default occurred before or after service of the writ, since the lien creditor who subsequently perfected its interest by garnishment in the same collateral as the secured creditor, took it subject to interest of the bank as the first secured party. *Earl Dubey,* 296 N.W.2d 582, 588-589.  Accordingly, while BFG's garnishment lien may entitle it to certain rights with respect to the Cash Collateral at issue, such rights, if any, are subordinate to Bridgeport's secured claim until released and shall not reduce or effect treatment of Bridgeport's first priority secured lien on Cash Collateral.

22.     Similarly, the relative priority of liens between Bridgeport and BFG on the Accounts determines the manner in which obligations due by the Debtor to these creditors would be paid, in whole or in part, from the proceeds derived from the Accounts. That is, much like a water fall allocation, as funds become available from Accounts paid into the Lock Box, or if paid to the Debtor directly, Bridgeport would be entitled to the first tranche of monies until fully satisfied for each factored Accounts and for any factoring of Accounts thereafter under the Agreement. Whereas, BFG, presumably would only be entitled to any secondary tranche of

40000/9150-9193885v2

funds that may be available from such Accounts, but only to the extent that Bridgeport was not due any amounts from the Debtor at the point in time when BFG would be paid a distribution.

23. For these reasons, Bridgeport objects to the relief requested in the BFG Motion on a limited basis, to the extent that any periodic adequate protection payments from the Accounts to BFG for any diminution in value in the machinery and equipment of the Debtor that may be granted by the Court are inconsistent and conflict with the terms and condition of the Interim Cash Collateral Order, and any subsequent cash collateral orders between Bridgeport and the Debtor. Bridgeport further objects to any adequate protection granted to BFG in the event that such relief otherwise infringes upon, diminishes and/or fails to preserve the *status quo* with respect to the lien priorities of Bridgeport and BFG in the Collateral, Cash Collateral, the Bridgeport Replacement Lien and Adequate Protection Payments granted by the Court in the Interim Cash Collateral Order.

**WHEREFORE**, Bridgeport Capital Funding, LLC, respectfully requests that the Court enter an Order (i) sustaining the Response; (ii) conditioning any adequate protection that may granted to Boston Finance Group, LLC from Accounts (A/R Collateral) of the Debtor in accordance with the respective lien priorities of Bridgeport and BFG; and (iii) grant such other and further relief as is just and proper.

Dated: January 21, 2013

          Respectfully submitted,

          **COLE, SCHOTZ, MEISEL,**
          **FORMAN & LEONARD, P.A.**

By: ___/s/_____
          Patrick J. Reilley (No. 4451)
          500 Delaware Avenue, Suite 1410
          Wilmington, DE 19801
          Tel: (302) 652-3131
          Fax: (302) 652-3117

                -and-

          **GENOVESE JOBLOVE & BATTISTA, P.A.**
          Barry P. Gruher, Esq.
          200 East Broward Blvd, Suite 1110
          Ft. Lauderdale, Florida 33301
          Telephone: (954) 453-8000
          Facsimile: (954) 331-2909

          *Counsel for Bridgeport Capital Funding LLC*