IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

------------------------------------------------------x
In re:                                              :    Chapter 11
                                                    :
GREENWOOD FORGINGS, LLC                             :    Case No. 13-10027 (BLS)
                                                    :
Debtor.                                             :
                                                    :    RE: D.I. 8
------------------------------------------------------x

## SECOND INTERIM ORDER (A) AUTHORIZING DEBTOR TO USE CASH COLLATERAL PURSUANT TO 11 U.S.C. §§ 105 AND 363(c)(2); (B) GRANTING ADEQUATE PROTECTION PURSUANT TO 11 U.S.C. § 361; AND (C) MODIFYING THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362

**THIS MATTER** came before the Court on **January 22, 2013 at 9:30 a.m.** upon the Debtor's Motion For Interim And Final Orders: (A) Authorizing Debtor To Use Cash Collateral Pursuant To 11 U.S.C. §§ 105 And 363(C)(2); (B) Granting Adequate Protection Pursuant To 11 U.S.C. § 361; (C) Modifying The Automatic Stay Pursuant To 11 U.S.C. §362; And (D) Scheduling A Final Hearing Pursuant To Bankruptcy Rule 4001 (the "Motion") [ECF. No. 8] pursuant to which the Debtor, Greenwood Forgings, LLC, seeks entry of a second interim order (the "Second Interim Cash Collateral Order") authorizing the use of Cash Collateral[1]. On January 14, 2013, the Court entered the First Interim Order: (A) Authorizing Debtor To Use Cash Collateral Pursuant To 11 U.S.C. §§105 And 363(C)(2); (B) Granting Adequate Protection Pursuant To 11 U.S.C. §361; (C) Modifying The Automatic Stay Pursuant To 11 U.S.C. §362; And (D) Scheduling A Final Hearing Pursuant To Bankruptcy Rule 4001 (the "First Interim Cash Collateral Order").

### RECITALS/FINDINGS OF FACT

A.    The Debtor has requested from Bridgeport Capital Funding, LLC ("**Bridgeport**") and Boston Finance Group LLC ("**BFG**") the use of Cash Collateral as set forth in the Motion

---

[1]    All capitalized terms not defined herein shall have the meanings ascribed to them in the Motion.

(the "Cash Collateral") and Bridgeport is willing to give such consent, subject to the terms and conditions set forth in this Second Interim Cash Collateral Order. Absent authority to use Cash Collateral, Debtor will not have sufficient available sources of working capital to preserve the value of its assets. The ability of the Debtor to obtain sufficient working capital and liquidity through the use of Cash Collateral as set forth in this Second Interim Cash Collateral Order is vital to the preservation and maintenance of the value of the Debtor's assets. Accordingly, the Debtor has an immediate need to obtain authorization to use Cash Collateral in order to, among other things, continue to operate in the ordinary course of business, and preserve and maximize the value of the assets of the Debtor's bankruptcy estate (as defined under Section 541 of the Bankruptcy Code, the "*Estate*") in order to maximize the recovery to all creditors of the Estate.

B. Subject to the Lien Challenge, as defined below, Bridgeport has a first priority secured lien on all of the Debtor's assets, including without limitation, furniture, fixtures and equipment, inventory, accounts receivable and/or accounts, products and proceeds thereof, now existing and hereafter arising, wherever located, including without limitation, the Cash Collateral, subject only to any applicable agreements for the subordination of Bridgeport's lien interests that may exist with respect to machinery and equipment (collectively, the "Collateral").

C. Subject to the Lien Challenge, as defined below, BFG asserts a first priority lien on the Debtor's machinery and equipment and proceeds thereof. Subject to the Lien Challenge, as defined below, BFG asserts a second priority lien on certain of the Debtor's Cash Collateral.

D. The terms of this Second Interim Cash Collateral Order are fair, just and reasonable under the circumstances, are ordinary and appropriate for transactions of this type, reflect the Debtor's exercise of its prudent business judgment consistent with its fiduciary duties, and are supported by reasonably equivalent value and fair consideration. The terms and

conditions of this Second Interim Cash Collateral Order have been negotiated in good faith and at arms' length by and among the Debtor, on one hand, and Bridgeport and BFG, on the other hand, with all parties being represented by counsel. Any consent to the use of Cash Collateral under the terms of this Second Interim Cash Collateral Order shall be deemed to have been given in good faith by Bridgeport and BFG as that term is used in Section 364(e) of the Bankruptcy Code.

E.  The continued use of Cash Collateral by the Debtor is necessary, essential and appropriate, and is in the best interest of and will benefit the Debtor, its creditors and its Estate, as its implementation will, among other things, provide the Debtor with the necessary liquidity to (a) continue to operate in the ordinary course of business, (b) preserve and maximize the value of the Debtor's Estate for the benefit of all the Debtor's creditors, and (c) avoid immediate and irreparable harm to the Debtor, its creditors, its businesses, its employees, and its assets.

F.  Sufficient cause exists for immediate entry of this Second Interim Cash Collateral Order pursuant to Bankruptcy Rule 4001(c)(2). Any objections that were made to the Debtor's use of cash collateral (to the extent such objections have not been overruled or withdrawn) are hereby overruled.

Based upon the foregoing, and for the reasons stated on the record, and after due consideration and good cause appearing therefor;

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED**, that:

1.  The relief requested in the Motion is Granted, on an interim basis, as provided in this Second Interim Cash Collateral Order. The Recitals are hereby incorporated by reference herein.

2.  **Authorization to Use Cash Collateral**. Subject to the terms and conditions of

this Second Interim Cash Collateral Order, the Debtor shall be and hereby is authorized to use on an interim basis, until February 21, 2013 (the "*Termination Date*"), the Cash Collateral up to the amount of Nine Hundred Fifty Thousand Dollars ($950,000.00), inclusive of amounts authorized under the First Interim Cash Collateral Order (the "*Second Cash Collateral Cap*"), subject to the liens and security interests granted to Bridgeport and BFG. Nothing in this Second Interim Cash Collateral Order shall authorize the disposition of any assets of the Debtor or its Estate outside the ordinary course of business, or the Debtor's use of Cash Collateral or other proceeds resulting therefrom, except as permitted in this Second Interim Cash Collateral Order.

3. **Bridgeport Replacement Liens.** As adequate protection for the diminution in value of its interests in the Prepetition Collateral, including Cash Collateral, on account of the Debtor' use of such Prepetition Collateral (including Cash Collateral), and the imposition of the automatic stay, Bridgeport is hereby granted pursuant to Sections 361 and 363 of the Bankruptcy Code, valid, binding, enforceable and perfected replacement liens upon and security interests in all Collateral, including without limitation, to the extent of any diminution in value of its interests in the Prepetition Collateral (the "*Bridgeport Replacement Lien*"); provided, however, that the Bridgeport Replacement Lien shall not extend to any causes of actions commenced, or that may be commenced, pursuant to chapter 5 of the Bankruptcy Code against Bridgeport or the proceeds of any such causes of action. The Bridgeport Replacement Lien shall have the same priority as Bridgeport's liens as of the Petition Date, senior to all other security interests in, liens on, or claims against any of the Collateral, including without limitation, the Cash Collateral, subject only to any applicable agreements for the subordination of Bridgeport's lien interests that may exist with respect to machinery and equipment.

4. **BFG Replacement Liens.** As adequate protection for the diminution in value of

4

its asserted interest in the Cash Collateral, on account of the Debtor' use of the Cash Collateral, and the imposition of the automatic stay, to the extent of its interest in Cash Collateral, if any, BFG is hereby granted pursuant to Sections 361 and 363 of the Bankruptcy Code, valid, binding, enforceable and perfected replacement liens upon and security interests in the Debtor's accounts and the proceeds thereof, including without limitation, to the extent of any diminution in value of its asserted interests in the Cash Collateral (the "*BFG Replacement Lien*"), subject to the *Bridgeport Replacement Lien* (the priority of the BFG Replacement Lien and Bridgeport Replacement Lien shall both have the same priority that existed prepetition) and other lien priorities; provided, however, that the BFG Replacement Lien shall not extend to any causes of actions commenced, or that may be commenced, pursuant to chapter 5 of the Bankruptcy Code against BFG or the proceeds of any such causes of action; provided further, however, that nothing herein shall prejudice BFG from seeking further adequate protection with respect to the Debtor's use, sale, or lease of its machinery and equipment or for the Debtor's use of the Cash Collateral. The *BFG Replacement Lien* shall have the same priority as BFG's asserted interest in Cash Collateral as of the Petition Date.

5.     **Bridgeport's and BFG's Additional Adequate Protection.** In exchange for Bridgeport's pending consent for the Debtor to use Cash Collateral and as ordered by the Court respecting BFG, the Debtor has agreed to grant Bridgeport and BFG the following as additional adequate protection of its interests in the Prepetition Collateral (the "*Additional Adequate Protection*"):

a.     **Replacement Liens:**

The *Bridgeport Replacement Liens* and the *BFG Replacement Liens* shall be provided to Bridgeport and BFG, respectively, and are governed as set forth in paragraphs (3) and (4) above.

b.  **Section 507(b) Priority Claims:**

As further adequate protection for the diminution in value of Bridgeport's security interests in the Prepetition Collateral (including Cash Collateral) on account of the Debtor's use of such Prepetition Collateral (including Cash Collateral), and the imposition of the automatic stay, this Second Interim Cash Collateral Order grants to Bridgeport, for the benefit of itself, as and to the extent provided by Section 507(b) of the Bankruptcy Code, an allowed super-priority administrative expense claim pursuant to Sections 503(b) and 507(a)(2) of the Bankruptcy Code to the extent of any diminution in value of Bridgeport's interests in the Prepetition Collateral (the "***Bridgeport Adequate Protection Super-priority Claim***"); provided, however, that the Bridgeport Adequate Protection Super-priority Claims shall not extend to any causes of actions commenced, or that may be commenced, pursuant to chapter 5 of the Bankruptcy Code against Bridgeport or the proceeds of the foregoing. The Bridgeport Adequate Protection Super-priority Claim shall have priority over all administrative expense claims and unsecured claims against Debtor and its Estate now existing or hereafter arising, of any kind or nature whatsoever.

c.  **Adequate Protection Payments:**

As further adequate protection, the Second Interim Cash Collateral Order authorizes and directs the Debtor to provide adequate protection to Bridgeport in the form of additional use of cash collateral to make periodic payments as funds become available from the proceeds of the Cash Collateral equal to fifty (50%) percent of the amounts due and owing, collected and/or to be collected by Bridgeport or the Debtor, on all pre-petition accounts and/or accounts receivable subject to the Agreement as set forth in attached the **Exhibit "A"**, including any and all customers of the Debtor as identified therein, and such other pre and post-petition customers, accounts and/or accounts receivable generated by the Debtor in connection with the Business (collectively, the "***Accounts***"), including without limitation, such other Accounts which Bridgeport has and/or continues to factor for the Debtor under the Agreement (the "***Adequate Protection Payments***"). The Adequate Protection Payments under this Second Interim Cash Collateral Order shall be equal to the total amount of Three Hundred Seventy Five Thousand ($375,000.00) Dollars, but not to exceed the total amount that Bridgeport is owed under the Agreement, and paid *pari passu* along with the Cash Collateral Cap.

d.  **Payment on Accounts:**

For purposes of this Second Interim Cash Collateral Order, and subject to subsection (c) of this paragraph (5), any and all customers identified in the Accounts, including without limitation, such other customers of the Debtor (collectively, the "***Customers***"), the Debtor and Customers are authorized to and shall remit payment on any and all Accounts due and owing the Debtor and/or Bridgeport, and such other Accounts of the Debtor in accordance with the terms and conditions of the Agreement and Notice of Assignment Letter(s) issued by Bridgeport to Customers into the Wells Fargo Lock Box No. 101004, Account No. xxxxx-xxx-4658 (the "Lock Box"). Upon receipt of payments into and availability of funds on Accounts from the Lock Box, Bridgeport shall forthwith disburse funds (i) to the Debtor for the use of Cash Collateral and (ii) payment of the Adequate Protection Payments, as provided in this Second Interim Cash Collateral Order.

e. **Additional Adequate Protection:**

Bridgeport and BFG reserve the right to seek additional forms of adequate protection, including for BFG the right to seek a Section 507(b) Superpriority claim subject, however, to the ***Bridgeport Replacement Lien*** (the priority of any Superpriority claim and the Bridgeport Replacement Lien shall both have the same priority that existed prepetition) and other lien priorities, any objections by any party-in-interest, including, without limitation, the Debtor, any Unsecured Creditor Committee (the "Committee") that may be appointed in this Chapter 11 case and/or the U.S. Trustee.

6. **Section 506(c) Claims.** Subject to a final order, no costs or expenses of administration which have or may be incurred in the Case at any time shall be charged against Bridgeport or the Collateral pursuant to Section 506(c) of the Bankruptcy Code without the prior written consent of Bridgeport and no such consent shall be implied from any other action, inaction or acquiescence by Bridgeport.

7. **Collateral Rights.** Until all of the Prepetition Bridgeport Obligations shall have been indefeasibly paid and satisfied in full, no other party shall foreclose or otherwise seek to enforce any junior lien or claim in any Collateral without further order of the Court, except as otherwise provided in this Second Interim Cash Collateral Order.

8. **Disposition of Collateral.** Debtor shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the Collateral in any way inconsistent with the terms and conditions of this Second Interim Cash Collateral Order without the prior written consent of Bridgeport and BFG (and no such consent shall be implied, from any other action, inaction or acquiescence by Bridgeport and BFG) and an order of this Court, except for sales of Debtor's Inventory in the ordinary course of its business or as approved by orders of the Bankruptcy Court entered prior to the date hereof.

9. **Bridgeport's Reservation of Rights.** The terms, conditions and provisions of this Second Interim Cash Collateral Order are in addition to and without prejudice to the rights of

Bridgeport to pursue any and all rights and remedies under the Bankruptcy Code, the prepetition Bridgeport Factoring Agreement, or any other applicable agreement or law, including, without limitation, rights to seek adequate protection and/or additional or different adequate protection, to seek relief from the automatic stay, to seek an injunction, to oppose any request for use of cash collateral or granting of any interest in the Collateral or priority in favor of any other party, to object to any sale of assets, and to object to applications for allowance and/or payment of compensation of Professionals or other parties seeking compensation or reimbursement from the Estate.

10. **BFG's Reservation of Rights.** The terms, conditions and provisions of this Second Interim Cash Collateral Order are in addition to and without prejudice to the rights of BFG to pursue any and all rights and remedies under the Bankruptcy Code, including, without limitation, rights to seek adequate protection and/or additional or different adequate protection, to seek relief from the automatic stay, to seek an injunction, to oppose any request for use of cash collateral or granting of any interest in the Cash Collateral or priority in favor of any other party, to object to any sale of assets, and to object to applications for allowance and/or payment of compensation of Professionals or other parties seeking compensation or reimbursement from the Estate.

11. **Binding Effect.** The provisions of this Second Interim Cash Collateral Order, the Super-priority Claims and any and all rights, remedies, privileges and benefits in favor of any of Bridgeport and BFG or acknowledged in this Second Interim Cash Collateral Order, and any actions taken pursuant thereto, shall be effective immediately upon entry of this Second Interim Cash Collateral Order pursuant to Bankruptcy Rules 6004(g) and 7062, shall continue in full force and effect, and shall survive entry of any such other order, including without limitation any

order which may be entered confirming any plan of reorganization, converting the Case to any other chapter under the Bankruptcy Code, or dismissal of the Case.

12. Any order dismissing the Case under Section 1112 or otherwise shall be deemed to provide (in accordance with Sections 105 and 349 of the Bankruptcy Code) that Bridgeport's and BFG's liens and security interests in the Collateral shall continue in full force and effect notwithstanding such dismissal until the Prepetition Bridgeport Obligations and all obligations owed to BFG are indefeasibly paid and satisfied in full.

13. Subject to the Lien Challenge, as defined below, in the event this Court modifies any of the provisions of this Second Interim Cash Collateral Order following the entry thereof, (a) such modifications shall not affect the rights or priorities of Bridgeport and BFG pursuant to this Second Interim Cash Collateral Order with respect to the Collateral or any portion of the Prepetition Bridgeport Obligations or any portion of the obligations owed to BFG which arises or is incurred or is advanced prior to such modifications, and (b) this Second Interim Cash Collateral Order shall remain in full force and effect except as specifically amended or modified.

14. With the understanding that the Debtor disputes that BFG has any interest in the Cash Collateral that is subject to any protection under the Bankruptcy Code and with the express reservation of rights of the Debtor to challenge BFG's asserted interest in the Cash Collateral, this Second Interim Cash Collateral Order shall be binding upon the Debtor, all parties in interest in the Case and their respective successors and assigns, including any trustee or other fiduciary appointed in the Cases or any subsequently converted bankruptcy case(s) of the any Debtor. This Second Interim Cash Collateral Order shall also inure to the benefit of Bridgeport and BFG and their respective successors and assigns.

13. **Objections Overruled**. All objections to the entry of this Second Interim Cash

Collateral Order are, to the extent not withdrawn, hereby overruled. Notwithstanding this, any Official Committee (if appointed) and any other party in interest granted standing by the Court (other than the Debtor and/or its successors with respect to Bridgeport) shall have until the later of: (i) seventy-five (75) days from the Petition Date, and (ii) sixty (60) days from the date a Committee is appointed (the "Challenge Period") to commence, as appropriate, a contested matter or adversary proceeding raising an objection or challenge to the validity, priority, and extent of Bridgeport's first priority secured claim and/or liens on the Collateral and Cash Collateral and BFG's asserted interest in the Collateral (the "Lien Challenge"). If no such adversary proceeding is timely commenced as of such date then, without further order of the Court, the claims, liens and security interests of Bridgeport and BFG's assertion that it has an interest in the Collateral, including without limitation Cash Collateral, subject to a further determination as to the value of BFG's interest in Cash Collateral, shall, without further order of the Court, be deemed to be finally allowed for all purposes in the Chapter 11 Case and any subsequent chapter 7 case and shall not be subject to challenge by any party in interest as to validity, priority or otherwise. Further, any trustee appointed or elected in this Chapter 11 Case shall, until the expiration of the period provided herein for asserting Lien Challenges, and thereafter for the duration of any adversary proceeding or contested matter commenced pursuant to this paragraph (whether commenced by such trustee or commenced by any other party in interest on behalf of the Debtor's estate), be deemed to be a party other than the Debtor and shall not, for purposes of such adversary proceeding or contested matter, be bound by the acknowledgments, admissions, confirmations and stipulations of the Debtor in this Second Interim Cash Collateral Order.

14. **Further Hearing.** A further Hearing on the *Debtor's Motion for Interim and*

*Final Orders: (A) Authorizing Debtor to Use Cash Collateral Pursuant to 11 U.S.C. §§105 and 363(c)(2); (B) Granting Adequate Protection Pursuant to 11 U.S.C. §361; (C) Modifying the Automatic Stay Pursuant to 11 U.S.C. §362; and (D) Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001* (the "*Motion*"), pursuant to Bankruptcy Rule 4001(c)(2) is scheduled for **February 21, 2013, at 12:00 noon prevailing Eastern time before this Court (the "*Further Cash Collateral Hearing*"**). The Debtor shall, within three (3) business days of the entry of this Second Interim Order by the Court, serve by overnight mail copies of this Second Interim Order to the Noticed Parties, as defined in the Motion and any other party that has requested notice in this Case as of the date of entry of this Order. Any party in interest objecting to the relief sought at the Further Cash Collateral Hearing shall serve and file written objections that conform to the applicable Bankruptcy Rules and Local Rules, which objections shall be served upon (a) the U.S. Trustee: 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801 (Attn: Jane M. Leamy, Esq.); (b) counsel for the Debtor: Werb & Sullivan, 300 Delaware Avenue, Suite 1300, Wilmington, DE 19801 (Attn: Duane D. Werb, Esq.); (c) counsel for Bridgeport: Genovese, Joblove & Battista, P.A., 200 E. Broward Blvd, Ste 1110, Ft. Lauderdale, Florida 33301 (Attn: Barry P. Gruher, Esq.) and Cole, Schotz, Meisel, Forman & Leonard, P.A., 500 Delaware Avenue, Suite 1410, Wilmington, Delaware 19801 (Attn: Patrick J. Reilley, Esq.) and (d) counsel for BFG: DLA Piper LLP, 919 North Market Street, Suite 1500, Wilmington, Delaware 19801 (Attn: Stuart M. Brown, Esq.) and shall be filed with the Clerk of the United States Bankruptcy Court for the District of Delaware, no later than Feb 14, 2013 at 4 pm prevailing Eastern time.

**Dated: January 25, 2013.**

HONORABLE BRENDAN L. SHANNON
UNITED STATES BANKRUPTCY JUDGE

11